TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JULIE A. HAMILL (CA No. 272742)
Assistant United States Attorney
J. ROBERT RENNER (CA No. 148587)
Assistant United States Attorney
United States Attorney's Office
300 North Los Angeles Street, Suite 7516
Los Angeles, California 90012
Telephone: (213) 894-2464
E-Mail: julie.hamill@usdoj.gov

Attorneys for Interested Party
UNITED STATES OF AMERICA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DON WAGNER; and THE AMERICAN INDEPENDENT PARTY OF CALIFORNIA,<br>*Plaintiffs*,<br><br>v.<br><br>SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California,<br>*Defendant*. | Case No. 8:26-cv-01263<br><br>**UNITED STATES' STATEMENT OF INTEREST**<br><br>Honorable Mark C. Scarsi<br>United States District Judge |

## I. Interest of the United States

"The counting of unlawful votes—or discarding of lawful ones—erodes public confidence that the election results reflect the people's will." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 78 (2026).

Courts have long recognized that "[p]reserving the integrity of the electoral process" is an "interest[] of the highest importance." *United States v. California*, No. 26-7070, 2026 WL 3212945, at *20 (9th Cir. Oct. 26, 2026) (Bumatay, J., dissenting) (quoting *First Nat'l Bank of Bos. v. Bellott*i, 435 U.S. 765, 788–89 (1978)). "[T]here is no dispute that …"permitting ineligible voters to vote would dilute the votes of lawful voters." *Id.* at *14 (Bennett, J., concurring). "[O]nce an unlawful vote has been cast, there is no way to unring the bell," *Cal. Nurses Ass'n v. Mullin*, No. 26-7139, 2026 WL 3275856, at *11 (9th Cir. Oct. 30, 2026) (Tung, J., dissenting from the denial of rehearing en banc). Indeed, "even the appearance of impropriety—here, voter fraud—undermines public confidence in elections." *Id.* at *12.

This case, brought by an elected official who is a candidate for public office, and by a political party, implicates the critical issues of election integrity and voter roll maintenance in California, which are of utmost importance to the United States of America. Under the National Voter Registration Act of 1993 ("NVRA"), and the Help America Vote Act of 2002 ("HAVA"), Congress charged the Attorney General with authority to conduct investigations and to ensure that elections are being held in compliance with federal laws. *See* 52 U.S.C. §§ 20510(a), 21111.

The United States respectfully submits this Statement of Interest to attend to the interests of the United States in this lawsuit pursuant to 28 U.S.C § 517.[1]

---

[1] The statute "contains no time limitation and does not require the Court's leave." *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1317 (S.D. Fla. 2017); *accord Karnoski v. Trump, 2018 WL 4501484*, at *2 (E.D. Mich. Sept. 20, 2018) (same).

## II. Voter List Maintenance Requirements under the NVRA

Congress enacted the NVRA in 1993 "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501(b)(1).

The NVRA "protect[s] the integrity of the electoral process" and "ensure[s] that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3), (4). Section 8 of the NVRA addresses state voter list maintenance procedures for federal elections. It prescribes the conditions under which voters may be removed, and the procedures states must follow before making those removals. 52 U.S.C. § 20507.

"[E]ach State shall . . . conduct a general program that makes a reasonable effort to remove"—because of death or change in residence—"the names of ineligible voters from the official lists of eligible voters[.]" 52 U.S.C. § 20507(a)(4)(A)–(B).

While Section 8 requires a State to make a reasonable effort to remove voters who have changed their residence, 52 U.S.C. § 20507(a)(4), it also limits when a State may remove a registrant on that ground. *Id.* § 20507(d)(1).

Unless the registrant confirms the move in writing, *id.* § 20507(d)(1)(A), a State may remove the registrant on that ground only if (i) the registrant fails to respond to a confirmation notice the State sends a registrant pursuant to § 20507(d)(2) and (ii) the registrant "has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice." 52 U.S.C. § 20507(d)(1)(B).

States must complete any systematic name removal program of ineligible voters not later than 90 days before a primary or general election for Federal office. 52 U.S.C. § 20507(c)(2)(A).

### III. <u>Election Administration Requirements under HAVA</u>

HAVA requires States to meet minimum standards of federal election administration, including voting systems, voter registration databases, maintenance of those databases, and provisional ballots. 52 U.S.C. §§ 21081-21083; *see also id.* § 21084.

Section 303 of HAVA directs state officials to implement "a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level" that contains the name and registration information of "every legally registered voter in the State." 52 U.S.C. § 21083(a)(1)(A). This section applies to all States that require voter registration for elections for Federal office. *See* 52 U.S.C. § 21083(a)(1)(B).

State or local election officials must "perform list maintenance with respect to the computerized list" on a regular basis." 52 U.S.C. § 21083(a)(2)(A).

HAVA established the Election Assistance Commission ("EAC"), 52 U.S.C. § 20921, which serves as "a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections," 52 U.S.C. § 20922. The EAC regularly publishes information on its activities. 52 U.S.C. § 20926. This includes the Election Administration and Voting Survey ("EAVS"), which asks all 50 states, the District of Columbia, and U.S. territories for data on various topics related to the administration of federal elections. *See generally* U.S. Election Assistance Comm'n, *The History, Evolution, and Future Directions of the Election Administration and Voting Survey* (2025).

Section 8 of the NVRA requires the State of California to "make available for public inspection … all records concerning implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1).

The voter registration data California reported to the EAC reflects list maintenance metrics that are among the worst in the nation and are inconsistent with

reasonable list maintenance practices under the NVRA and HAVA. The anomalies in the data California reported to the EAC for the 2024 EAVS Report demonstrate that the State of California's list maintenance program and election administration fail to comply with the NVRA and HAVA. *See*, U.S. Election Assistance Commission, *Election Administration and Voting Survey 2024 Comprehensive Report, A Report from the U.S. Election Assistance Commission to the 119th Congress* (June 2025), https://perma.cc/MMJ5-7F9Z (last visited Nov. 5, 2026).

California removed 3,177,057 voters during the 2022-24 EAVS reporting window. *Id.* at 185. That is approximately 12.4% of all registered California voters. *Id.* Of those removals, 53.7% were removed for failing to return confirmation notices, 29.5% were removed because the registrant relocated, and 11.9% were removed because the registrant died. *Id.*

At the same time, EAVS data revealed that ten California counties, possessing a combined 1,796,437 registrations, removed *zero* voter registrations for failure to return confirmation notices during the EAVS reporting window. *See* Dkt. 1, ¶ 20. The EAVS data further revealed that another ten counties removed fewer than fifty registrations for failing to return confirmation notices. *Id.* ¶ 21.

Together, those twenty counties hold 3,440,358 registrations but reported only 218 such removals. *Id.* ¶ 22. By contrast, Mono County, California, with 9,175 registrations, removed 574 registrations for failure to return confirmation notices. *Id.* ¶ 24. San Diego County, with 2,228,462 total registrations, reported removing 306,033 registrations for failure to return confirmation notices. *Id.* ¶ 23. The reported removal numbers indicate a substantial and unexplained inconsistency in how counties maintain their voter registration rolls relative to their respective registration populations.

## IV. Plaintiff Don Wagner Has Standing

The NVRA affords a private right of action to any "person who is aggrieved by a violation of [the] Act." 52 U.S.C. § 20510(b)(1). The Supreme Court has held that candidates for public elective office have standing to challenge the rules that govern the counting of votes in their elections. *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 82-83 (2026). "Candidates have a concrete and particularized interest in the rules that govern the counting of votes in their elections, regardless whether those rules harm their electoral prospects or increase the cost of their campaigns." *Id.* at 82. Such standing does not require a pocketbook injury, nor does it require the plaintiff-candidate to "show some substantial risk that a rule will cause them to lose the election, prevent them from achieving a legally significant vote threshold, or damage their reputation or finances." *Id.* at 79. "Candidates, in short, are not 'mere bystanders' in their own elections." *Id.* at 78 (quoting *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025)).

The *Bost* rule of presumptive candidate standing is fully applicable in the context of a private right of action under the NVRA. A candidate is injured if a state fails to comply with the NVRA's requirement that it make "a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4). Without accurate voter rolls, a candidate cannot know who the real voters are. He cannot reliably contact the actual voters by mass mailings or telephone. And he cannot be certain that fraud will not be enabled by the presence of ineligible voters on the rolls. Public confidence in the election results will be eroded, to the detriment of the candidate for office. *See Bost*, 607 U.S. at 78 ("The counting of unlawful votes—or discarding of lawful ones—erodes public confidence that the election results reflect the people's will.").

Because Plaintiff Don Wagner was a candidate for the office of California Secretary of State when this action was filed, he has standing under *Bost*. Dkt. 1, ¶¶ 4, 62-65. Even without *Bost*, Mr. Wagner would have standing for purposes of the

NVRA, because he has alleged a concrete, particularized injury in the form of increased campaign expenditures and impaired ability to reach voters as a direct consequence of California's voter rolls, which do not comply with the NVRA. Dkt. 1, ¶¶ 66-86. *See Ill. Conservative Union v. Illinois*, 2021 U.S. Dist. LEXIS 102543, *9-13, 2021 WL 2206159, *3-4 (N.D. Ill. June 1, 2021) (plaintiffs requesting state electronic voter registration data suffered "informational injury" sufficient to confer standing for NVRA claim); *Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1270 (D. Colo. 2010) (plaintiffs' expenditure of money sufficient to confer standing for NVRA claim).

Standing is determined as of the time the action is brought, not by reference to later events. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180, 184 (2000); *Common Cause*, 750 F. Supp. 2d at 1270. Nor is Mr. Wagner's claim moot. Even if he did not prevail in the November 3, 2026 general election, he has stated his intention to run again for California Secretary of State in 2030. *See* Dkt. 1, ¶ 64. And he currently holds another elected office as a member of the Orange County Board of Supervisors. Dkt. 1, ¶ 61. Mr. Wagner thus "continue[s] to have a 'personal stake in the outcome' of the lawsuit." *Maldonado v. Lynch*, 786 F.3d 1155, 1160-61 (9th Cir. 2015) (en banc) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990)). His dispute remains live. Indeed, even if it were not, this case would qualify for the exception to mootness for acts that are "capable of repetition, yet evading review." *Friends of the Earth*, 528 U.S. at 190-91 (citing *Olmstead v. L.C.*, 527 U.S. 581, 594 n.6 (1999)).

## V. <u>Conclusion</u>

By failing to conduct proper list maintenance and remove ineligible voters from the voter rolls, Secretary Weber is in violation of Section 8 of the NVRA and Section 303 of HAVA.

Dated: November 6, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

*/s/ Julie A. Hamill*
JULIE A. HAMILL
Assistant United States Attorney
J. ROBERT RENNER
Assistant United States Attorney
United States Attorney's Office
Central District of California

Attorneys for Interested Party
UNITED STATES OF AMERICA